### 6984

### MARSHA v. RICHLAND COUNTY.

MUNICIPAL BOUNDARIES—COLUMBIA.—Where a city boundary has been established by commissioners charged with that duty and their action has been generally accepted and acquiesced in by those concerned and recognized by the Legislature, such boundaries cannot be altered or changed by subsequent measurement not sanctioned or recognized by legislative authority, although it shows some departure from the limits specified in the charter.

Before DANTZLER, J., Richland, July, 1907. Reversed.

Action by Stephen Marsha against Richland County. From order affirming judgment of Magistrate Moorman, defendant appeals.

*Messrs. Thomas & Thomas,* for appellant, cite: *Common recognition of a boundary by the citizens and acquiescence by municipality will be accepted by the courts where the boundary is indefinite:* 85 Ill., 562; 93 Ky., 444; 82 Ind., 321; 20 Ency., 1149; 27 S. C., 149; 64 Ia., 297.

*Messrs. James H. Fowles, Jr.,* and *W. A. Clarkson,* contra, cite: *Can the boundaries of a town, as fixed and established by statute, be changed or altered by common recognition or acquiescence?* 20 Ency., 1150; 11 Lea., 1; 21 Fla., 492; 97 U. S., 284; 123 Cal., 598; 10 Col., 553; 20 Fla., 344; 24 Fla., 226. *Can it be changed by the municipal authorities?* 55 S. E., 499; 116 Ga., 313; 20 Ency., 1150, 1151; 12 Kan., 301; 11 Lea., 1; 1 Sevan., 164; 3 Head., 318; 93 Ky., 444.

July 28, 1908. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff brought this action in the court of Magistrate Moorman to recover damages for injuries to his horse and wagon caused by a defective bridge,

alleged to have been situated several feet outside the eastern limit of the city of Columbia. The defendant contended that the bridge was located within the city of Columbia, and that the defendant was, therefore, not liable. The magistrate gave judgment for $89, which, on appeal, was affirmed by the Circuit Court, Judge Dantzler presiding. The exceptions of defendant county to this Court contend that the undisputed facts show that said bridge was located within the city of Columbia and that no liability attached to defendant.

It is admitted that the bridge is located several feet west of the eastern line of Harden street, and defendant contends that the eastern line of Harden street is the eastern limit of the city of Columbia; whereas, the plaintiff contends that the eastern limit of the city of Columbia is a line parallel to but twenty-two feet west of the eastern line of Harden street, and that the bridge is without the city limits.

By the act of 1786, 4 Stat., 751, for the purpose of establishing the town (now city) of Columbia, certain commissioners were "authorized and required to lay off a tract of land of two miles square, near Friday's Ferry, on the Congaree river, including the plain of the hill whereon Thomas and James Taylor, Esquires, now reside, into lots of one-half acre each, and the streets shall be of such dimensions, not less than sixty feet wide, as they shall think convenient and necessary, with the two principal streets running through the center of the town at right angles of one hundred and fifty feet wide, which said land shall be, and the same is hereby declared to be, vested in the said commissioners and their lawful successors for the use of the State." Pursuant to this authority, the town was laid off into lots and streets and the southern, eastern and northern boundaries fixed (but leaving open the western boundary, which was the subject of litigation in *State ex rel. Bridge Co.* v. *City of Columbia,* 27 S. C., 143, 3 S. E., 55), and plat of same made and filed with the Secretary of State. This plat shows Harden street as the eastern boundary of Colum-

bia.   There is no evidence tending to show that the eastern line of Harden street, as located, was different from its location up to the time of the alleged delict.   In 1850, Arthur & Moore, as surveyors, under ordinance of the city of Columbia, made a map of the city of Columbia, and the eastern line of Harden street was given as the eastern limit of the city. Plat of the city, made by A. Y. Lee in 1869; one by J. G. Guignard, commissioner; one by G. T. Berg, architect and surveyor, in 1868, and one by G. McDuffie Hampton and D. B. Miller in 1903; each represents the eastern line of Harden street as the eastern boundary of Columbia.   A plat of Shandon gives the eastern line of Harden street as the dividing line between Shandon and Columbia.   In 1870, the Legislature passed an act which, among other things, extended the eastern limits of the city "on the side of Harden street to embrace all the territory included between Harden street and a line running parallel to said Harden street and distant therefrom 945 feet."   14 Stat., 354. The boundaries of the city were actually extended, pursuant to this act, and designated by marks, and the limit thus fixed was commonly recognized by the city and public generally; and under act of 1871, 14 Stat., 569, the wards of the city were made to conform to the extended limits.   But in 1878, 16 Stat., 457, the eastern boundary of the city was established and fixed as it was before the passage of the act of 1870.   It is admitted that, upon the passage of the act of 1878, the eastern line of Harden street was recognized by the public generally as the eastern limit of the city, and that Harden street, out to its eastern line, was worked and kept in repair by the city authorities.

Now, as against all this, plaintiff offers the testimony of E. N. Chisolm, Jr., city engineer, to the effect that in 1906, at the time this suit was brought, using the map of Arthur & Moore, above mentioned, he located the center of Assembly street by monuments established by Arthur & Moore, and measured one mile, or 5,280 feet, along Gervais street, and found that such distance lacked 22 feet of reaching the

eastern boundary of Harden street. By another method, measuring one-half of Assembly street at 75 feet, estimating the width of nine streets at 100 feet each, and estimating ten squares at 417 31-100 each, and Harden street as 150 feet, the mile limit would end 18.10 feet west of the eastern line of Harden street.

In making the actual measurements, Mr. Chisolm used a 100-foot U. S. Standard steel tape and measured upon the rail of the street railway track. Being a careful and competent surveyor, this single measurement from the assumed starting point was probably more accurate than the measurement by the surveyors of 1786, who doubtless used the link chain and marked each chain measurement with a peg stuck in the ground. The lengthening of the chain, possibly several inches, by the mere wearing of its many joints, the slanting of the pegs forward, as stuck in the ground, the condition of the country, wood and field then, as compared with the city streets now, and the personal equation which must necessarily enter every survey, or other causes, may have contributed to make the difference between the old measurement and the new, and yet the difference be perfectly compatible with an honest and faithful effort on the part of the commissioners of 1786 to perform the duty imposed upon them. The point is that the evidence all shows that the old commissioners established the eastern line of Harden street as the eastern limit of the city. Such territory was declared and accepted as the town of Columbia. The establishment of the outer lines was of more importance in carrying out the purpose of the charter than the inner lines of streets and lots, for such outer lines indicated the limit of the grant, or dedication, and marked the jurisdiction of the municipality. Mr. Chisolm did not ascertain his starting point in Assembly street by any reference to the survey of 1786, but was controlled by monuments said to have been placed by Arthur & Moore elsewhere, for he testified: "I have found the center of Assembly, using monuments located at intersection of Sumter and

Senate, Bull and Senate, and Lady and Sumter * * *. The correctness of my measurements in determining center line of Assembly street depends entirely upon the correctness of location of stone monuments at corner of Senate and Sumter, Bull and Senate, and Lady and Sumter streets. The monuments were placed by Arthur & Moore in 1850." Mr. Chisolm also testified that he found squares in the city irregular in measurement, sometimes more and sometimes less than 417 31-100 feet. He further testified: "There is a monument at the intersection of Senate and Harden streets; using this monument and monument at the corner of Gregg and Senate street, turning right angle from that, this line came a few feet to the east of the center line of Harden street and a few feet west of the mile limit as surveyed by myself along Gervais. street." If, therefore, these monuments, which are much closer to the *locus in quo,* are correctly located, then, if Harden street was located at right angle to Senate street, according to the adopted scheme, the center line of Harden street should be further east than as now located. Mr. Chisolm also testified that in big fires in cities the boundaries are often left in confusion, and he recalled the historic razing of Columbia by fire in 1865. All this tends to show that there is uncertainty in the accuracy of Mr. Chisolm's location of the center of Assembly street, as it existed in 1786, and upon the correctness of this location depends the value of his measurement. Moreover, the measurement by Mr. Chisolm was not made pursuant to any legislative authority to locate the eastern city limit, and has never received any public recognition; whereas, Harden street, as now located, has not only received the general recognition and acquiescence of the public, but the legislature, in 1870, 1871 and 1878, recognized Harden street as the eastern boundary of the city. And, as stated, there is nothing to show that Harden street is now different in width from what it was in 1786, or at any other subsequent period.

In the case of *State ex rel. Bridge Co.* v. *Columbia,* 27 S. C., 137, 149, 3 S. E., 55, the Court uses this language: "Where the boundaries are vague and indefinite, the practical interpretation which has been given by the citizens of the disputed territory in exercising municipal privileges, such as voting, etc., may be adopted by the Court, and boundaries may be defined by long use, confirmed by legislative recognition." The principle thus stated may be applied to the case at bar, if it be deemed that the eastern boundary of the city was uncertain and indefinite. Instead of being indefinite and uncertain, however, the eastern boundary of the city has been actually surveyed and located by commissioners charged with such duty, and their action has been generally accepted and acquiesced in by those concerned, and this is conclusive of the question of location. A municipal boundary so established and recognized cannot be overthrown or shaken by subsequent measurements not sanctioned or recognized by the legislature, even though such measurement may tend to show some departure from the limits as specified in the charter. 6 Cyc., 182, and cases cited in note 30. The question is not whether the boundaries of a town, as fixed and established by statute, can be changed or altered by common recognition and acquiescence, but it is whether the boundaries of a town, located by commissioners appointed for that purpose, and generally accepted as correct, may be changed or altered by a subsequent survey, without legislative sanction or recognition.

Our conclusion upon the undisputed facts is that the bridge in question is within the limits of the city of Columbia.

The judgment of the Circuit Court is reversed.